(COMMON LAW.)

## ELIASON *et al.* v. HENSHAW.

Where A. offered to purchase of B. two or three hundred barrels of flour, to be delivered at Georgetown, (District of Columbia,) by the first water, and to pay for the same 9 dollars 50 cents per barrel; and to the letter, containing this offer, required an answer *by the return of the wagon by which the letter was sent.* This wagon was at that time in the service of B., and employed by him in conveying flour from his mill to *Harper's Ferry; near to which place A. then was.* His offer was accepted by B., in a letter sent by the first regular mail to Georgetown, and received by A. at that place; but no answer was ever sent to *Harper's Ferry. Held,* that this acceptance, communicated at a place different from that indicated by A., imposed no obligation binding upon him.

An offer of a bargain, by one person to another, imposes no obligation upon the former, unless it is accepted by the latter according to the terms on which the offer was made. Any qualification of, or departure from, those terms, invalidates the offer, unless the same be agreed to by the party who made it.

ERROR to the Circuit Court for the District of Columbia.

This cause was argued by Mr. *Jones* and Mr. *Key,* for the plaintiff in error, and by Mr. *Swann* for the defendant in error.

Mr. Justice WASHINGTON delivered the opinion of the Court. This is an action, brought by the defend-

ant in error, to recover damages for the non-performance of an agreement, alleged to have been entered into by the plaintiffs in error, for the purchase of a quantity of flour at a stipulated price.   The evidence of this contract given in the Court below, is stated in a bill of exceptions, and is to the following effect : A letter from the plaintiffs to the defendant, dated the 10th of February, 1813, in which they say: " Capt. Conn informs us that you have a quantity of flour to dispose of.   We are in the practice of purchasing flour at all times, in Georgetown, and will be glad to serve you, either in receiving your flour in store, when the markets are dull, and disposing of it when the markets will answer to advantage, or we will purchase at market price when delivered; if you are disposed to engage two or three hundred barrels at present, we will give you 9 dollars 50 cents per barrel, deliverable the first water in Georgetown, or any service we can.   If you should want an advance, please write us by mail, and will send you part of the money in advance."   In a postscript they add, " Please write by return of wagon whether you accept our offer."   This letter was sent from the house at which the writer then was, about two miles from Harper's Ferry, to the defendant at his mill, at Mill Creek, distant about 20 miles from Harper's Ferry, by a wagoner then employed by the defendant to haul flour from his mill to Harper's Ferry, and then about to return home with his wagon.   He delivered the letter to the defendant on the 14th of the same month, to which an answer, dated the succeeding day, was written by the defendant, addressed to the plaintiffs at Georgetown,

1819.

Eliason
v.
Henshaw.

and despatched by a mail which left Mill Creek on the 19th, being the first regular mail from that place to Georgetown. In this letter the writer says, "Your favour of the 10th inst. was handed me by Mr. Chenoweth last evening. I take the earliest opportunity to answer it by post. Your proposal to engage 300 barrels of flour, delivered in Georgetown, by the first water, at 9 dollars 50 cents per barrel, I accept, and shall send on the flour by the first boats that pass down from where my flour is stored on the river ; as to any advance, will be unnecessary—payment on delivery is all that is required."

On the 25th of the same month, the plaintiffs addressed to the defendant an answer to the above, dated at Georgetown, in which they acknowledge the receipt of it, and add, " Not having heard from you before, had quite given over the expectation of getting your flour, more particularly as we requested an answer by return of wagon the next day, and as we did not get it, had bought all we wanted."

The wagoner, by whom the plaintiffs' first letter was sent, informed them, when he received it, that he should not probably return to Harper's Ferry, and he did not in fact return in the defendant's employ. The flour was sent down to Georgetown some time in March, and the delivery of it to the plaintiffs was regularly tendered and refused.

Upon this evidence, the defendants in the Court below, the plaintiffs in error, moved that Court to instruct the jury, that, if they believed the said evidence to be true, as stated, the plaintiff in this action was not entitled to recover the amount of the price of

the 300 barrels of flour, at the rate of 9 dollars 50 cents per barrel. The Court being divided in opinion, the instruction prayed for was not given.

The question is, whether the Court below ought to have given the instruction to the jury, as the same was prayed for? If they ought, the judgment, which was in favour of the plaintiff in that Court, must be reversed.

It is an undeniable principle of the law of contracts, that an offer of a bargain by one person to another, imposes no obligation upon the former, until it is accepted by the latter, according to the terms in which the offer was made. Any qualification of, or departure from, those terms, invalidates the offer, unless the same be agreed to by the person who made it. Until the terms of the agreement have received the assent of both parties, the negotiation is open, and imposes no obligation upon either.

In this case, the plaintiffs in error offered to purchase from the defendant two or three hundred barrels of flour, to be delivered at Georgetown, by the first water, and to pay for the same 9 dollars 50 cents per barrel. To the letter containing this offer, they required an answer by the return of the wagon, by which the letter was despatched. This wagon was, at that time, in the service of the defendant, and employed by him in hauling flour from his mill to Harper's Ferry, near to which place the plaintiffs then were. The meaning of the writers was obvious. They could easily calculate by the usual length of time which was employed by this wagon, in travelling from Harper's Ferry to Mill Creek, and back

again with a load of flour, about what time they should receive the desired answer, and, therefore, it was entirely unimportant, whether it was sent by that, or another wagon, or in any other manner, provided it was sent to *Harper's Ferry,* and was not delayed beyond the time which was ordinarily employed by wagons engaged in hauling flour from the defendant's mill to Harper's Ferry. Whatever uncertainty there might have been as to the *time* when the answer would be received, there was none as to the *place* to which it was to be sent; this was distinctly indicated by the mode pointed out for the conveyance of the answer. The place, therefore, to which the answer was to be sent, constituted an essential part of the plaintiff's offer.

It appears, however, from the bill of exceptions, that no answer to this letter was at any time sent to the plaintiffs, at Harper's Ferry. Their offer, it is true, was accepted by the terms of a letter addressed *Georgetown,* and received by the plaintiffs at that place; but an acceptance communicated at a place different from that pointed out by the plaintiffs, and forming a part of their proposal, imposed no obligation binding upon them, unless they had acquiesced in it, which they declined doing.

It is no argument, that an answer was received at Georgetown; the plaintiffs in error had a right to dictate the terms upon which they would purchase the flour, and, unless they were complied with, they were not bound by them. All their arrangements may have been made with a view to the circumstance of place, and they were the only judges of its

*1819.*

*Eliason v. Henshaw.*

importance. There was, therefore, no contract con-
cluded between these parties, and the Court ought,
therefore, to have given the instruction to the jury,
which was asked for.

Judgment reversed. Cause remanded, with direc-
tions to award a *venire facias de novo.*