# CORPORATION COURT OF THE CITY OF LYNCHBURG

Rivermont Co.

v.

W. W. Larkin

October 1890

By Judge J. Singleton Diggs

The bill alleges that defendant entered into an option contract in writing under his seal, whereby in consideration of $5.00 to him paid he bargained and sold to McLane and others the sole and exclusive right to purchase of him any time within ninety days from date, certain lands for a certain named price upon the terms of "one fourth cash and balance in six, twelve and eighteen months, title retained, or otherwise as may be agreed upon," and defendant bound himself not to sell or encumber to another the said land within the said ninety days. The contract is filed with the bill and is partly in print and partly in writing. The bill further alleges that on two occasions before the option expired plaintiff, who had become assignee of said contract, desired to notify defendant of its acceptance of said option, but defendant could not be found; that written notice signed by or for the Rivermont Company, setting out that it was assignee of the contract and accepted the option given it of purchasing and was ready to comply with its terms, was left at the defendant's office and place of business some days before the ninety days expired, and also, before it expired, such written notice was served upon the wife of defendant at his usual place of abode, he being still absent, in the mode prescribed by statute for serving notices. No response of any sort to these notices was made by defendant. And after the ninety days expired the defendant was again notified personally that the option was accepted, the plaintiff ready to comply and wanted the purchase consummated. It seems no response was made by defendant. Then plaintiff tendered on two occasions the cash payment required by the contract, demanding a deed, which the defendant refused to receive and announced his refusal to carry out said contract. The bill alleges

the readiness of plaintiff to carry out its part of the contract and prays for specific performance against the defendant.

The defendant demurs to the bill, first because the lack of mutuality in the contract renders it void, and many authorities are cited to show that want of mutuality will avoid a contract, that a contract should be binding on both parties. However that may be, I do not see how the want of mutuality applies here. In the first place, and by virtue of the defendant's execution of the optional contract, the plaintiffs bought and paid for a qualified limited interest in the land. The defendant sold it and received the consideration for it. The plaintiff having performed all that defendant required, or its contract required it to do, had nothing more to do like one who has paid for goods and calls for delivery. Plaintiff had not bought the land but only the exclusive option or privilege for a limited time of taking the land, and in case within the time limited it should elect to take it (thereby for the first time contracting to buy the land itself), he obligated himself to comply with the specified terms. Having purchased in the beginning the option and paid for it, that contract seems to have as much mutuality as any contract whereby one pays cash for goods or labor which another, in consideration of the cash, has promised to give him.

The authorities are numerous in support of the proposition that a contract or written offer signed by the seller of land may bind him without binding the other party to purchase, for his acceptance may be verbal; and so the purchaser may bind himself by offer in writing and the seller not be bound, under the Statute of Frauds.

It is argued that these optional contracts are not enforceable, and authorities are cited to support the argument. The leading case upon the subject is *Cooke v. Oxley*, 3 T.R. 653, 100 Eng. Rep. 785 (K.B. 1790).

It is sufficient to say of that case that it does not apply to the case in hand, but in some aspects may apply to mere voluntary verbal offers of sale made without consideration. *Chitty on Contracts*, vol. 1, p. 14, says:

> *Cooke v. Oxley* was decided on the ground that it appeared by the record that there was only a proposal of sale by one party and no allegation that the other party had acceded to the contract.

See the author's note citing many cases and text writers which criticizes the doctrine of *Cooke v. Oxley*, and see also Bailey's *Conflict of Judicial Decisions*, p. 193, where the authorities *pro* and *con* as to a simple offer without consideration are collated, whereby it appears that *Cooke v. Oxley* was explained afterwards by the Court that decided it.

The case before us, however, is one where parties able to contract, willing to contract, and intending to contract have put that intention in writing under seal, expressing the receipt of a valid consideration for the contract. Why it should not be a valid contract, enforceable according to the doctrines of equity, is more than I can perceive.

It is contended, however, that the seal does not import a consideration in equity, nor estop a party from denying the receipt of a consideration. Neither of these questions arise here, because the actual receipt of the consideration does not depend upon the presumption arising from the seal. The contract, an exhibit to the bill, acknowledges receipt of the consideration and defendant must admit it. The party demurring admits the recitals in the exhibits and is not now asking to deny anything. In reply to the argument that the consideration of $5.00 is merely nominal and frivolous, it may be said that it is the full valuation put upon the thing sold and bought by the parties themselves, and the Court must presume it to be full value. As to whether inadequacy of consideration alone avails the defendant anything, see the remarks of Judge Burks, in *Stearns v. Beckham*, 72 Va. (31 Gratt.) 379 (1879), and *Smith v. Henkel*, 81 Va. 524 (1886).

The defendant further contends that the bill is demurrable because it does not allege that plaintiff made a tender of the cash payment within the ninety days, that mere acceptance of the option within that time amounted to nothing. And here arises the chief point involved in the cause. The question is, what, under the contract, was the plaintiff bound to do within the ninety days in order to convert the optional contract into a contract of purchase? The answer to this question will furnish the key to the solution. Much was said in argument as to whether in many supposed cases time is of the essence of the contract and whether the Court will hold it to be so. Undoubtedly, parties can make time of the essence of their contracts as well as they can make money or other thing, and it is the business of the courts to enforce contracts as they are made. But in the construction of contracts time is not usually considered of the essence of the contract unless it plainly, distinctly appears that the parties have intended mutually to make it so. See *Waterman on Specific Performance*, p. 466.

The general principles applied to such contracts, many of which are applicable here, will be found well stated in chapter 16 of *Waterman on Specific Performance*; also *Green v. Covillaud*, 10 Calif. 317, 70 Am. Dec. 725 and notes (1858), and *Taylor v. Baldwin*, 27 Ga. 438, 73 Am. Dec. 736 (1859).

It is clear that the defendant having sold to the plaintiff for the period of ninety days the exclusive privilege to purchase land at a certain price and

bound himself for the period named not to sell to another, it was the design of the parties that such rights and obligations should be limited to the time specified. The right of election to purchase or not, residing in the plaintiff, and the obligation of defendant to sell ceased to exist at the expiration of the ninety days. The plaintiff did make his election within the time specified and gave notice of his acceptance to the defendant and his readiness to comply with the optional contract. In the argument of the case all question as to the validity of the notice of acceptance given by the plaintiff is waived, and the notice is conceded to be good. The defendant remained silent and passive. Was the plaintiff bound to tender the cash payment in addition to giving the said notice? I think it is clear that he was not. The notice was an unconditional acceptance of defendant's offer, and that constituted a contract for the sale and purchase of the land upon the terms specified. The request for the deed made in the notice was merely a request, not a condition of payment. It was like the request made by the purchaser in *Fitzhugh v. Jones*, 20 Va. (6 Munf.) 83 (1818). As soon as the plaintiff communicated in writing, as it did, to the defendant, its acceptance of the option, the parties stood exactly as if the contract had been evidenced by one paper signed by both parties, whereby defendant sold and plaintiff bought a piece of land on the terms of one fourth cash, etc. The two papers, one signed by defendant and the other (the notice) signed by plaintiff, together made one contract of sale and purchase binding on both parties, with which the stipulation as to ninety days has no relation or effect. After the acceptance and notice, the stipulation as to ninety days ceased to have force.

*Moses v. McLain*, 2 So. 741 (Ala. 1887), decided by the Supreme Court of Alabama, holds that the acceptance makes the valid mutual contract. See also the authorities cited by the Court. The opinion of the United States Court in *Johnston v. Trippe*, 33 F. 530 (N.D. Ga. 1887), goes very fully into this subject, and the textwriters and authorities are freely quoted to sustain the conclusions of the Court, which is that "when the party holding the option signifies his acceptance within the time limited, and upon the terms stated, the obligation of the contract becomes mutual and capable of enforcement at the instance of either party." Both parties being thus bound in a contract of purchase of land, and the plaintiff seeking here specific performance, the inquiry arises whether plaintiff has complied or offered to comply with the contract on his part. The terms are "one fourth cash, balance in six, twelve and eighteen months, title retained or otherwise as may be agreed." If that language is to be construed according to common usage, and the transaction to be viewed according to common usage, there can be no doubt that the purchaser is entitled to a reasonable time after the execution of the contract

within which to tender the cash payment. If the cash were tendered within the next week, or next few days, or next hour after the signing of the contract, would the seller, who had remained silent and acquiescent, be allowed to say "you have violated your contract and lost your rights, because the terms were cash, and behold, a day, a week or an hour has passed?" Surely a court of equity would not seriously entertain a plea of that sort.

In *Fitzhugh v. Jones*, 20 Va. (6 Munf.) 83 (1818), the purchaser agreed to pay $1,000 "immediately." The Court held, "the word meant that payment should be prompt, in contradistinction to a credit payment, and a tender of the money without any unreasonable delay was sufficient." This is the universal meaning of the term "one fourth cash," etc., used in purchase of lands, and it is the common custom to allow some reasonable time within which to tender the cash. The purchaser may be hastened and the time allowed shortened by notice and demand from the seller. When, as in this case, the purchaser promptly announces himself ready to pay and requests a deed, and the defendant makes no response, surely he ought not be allowed to take advantage of a short delay occasioned by himself.

The case of *Weaver v. Burr*, 8 S.E. 743 (W. Va. 1888), decided by the Court of Appeals of West Virginia, Judge Snyder dissenting, is relied on by the defendant, and strongly urged as authority in this case. The opinion of the Court is rather a remarkable one, and the cases and facts cited to sustain it deserve some notice.

The option involved in that case was one given by Burr to the plaintiffs, not under seal and without consideration, for a limited time to purchase his farm of five hundred acres more or less at $6.25 per acre, cash. The plaintiffs made some sort of acceptance which was perfectly satisfactory to Burr, survey was made, etc., and the sale would doubtless have been consummated but for the sudden death of Burr. The land in the meantime having considerably increased in value, the heirs refused to carry out the sale, and the Court set about to discover many grounds on which to justify their refusal. The second section of the syllabus expressly announces as a complete, distinct proposition that an unconditional acceptance of Burr's offer, communicated to him within the time limited, and that only, was essential to convert his offer into a valid contract of sale. Yet, in section 5 of the syllabus, it is said that payment or tender in cash of the whole price of the land at $6.25 per acre was a necessary element. The reporter states "the syllabus is by the Court," which may account for this apparent inconsistency. A number of authorities are cited by the Court in its opinion, but in nearly every instance where the authority cited supports the proposition announced, the proposition had but little, if anything, to do with the case. For example, a host of cases are cited in the outset of the

opinion in support of the doctrine that an offer to sell made without consideration may be retracted before it is accepted. In the case before the Court there was no effort to retract or withdraw the offer either before or after acceptance. The cases cited and quoted from by the Court are as follows.

1. *Boston & Maine RR. v. Bartlett*, 57 Mass. (3 Cush.) 224 (1849), was an offer without consideration, accepted within the given time and money tendered within the given time. The Court held it a binding contract and decreed specific performance, the Court holding distinctly that the acceptance of the offer within the time given — not acceptance and performance — ripened it into a contract.

2. *Dickinson v. Dodds*, L.R. 2 Ch. Div. 463 (1876), was likewise an offer without consideration to sell within a limited time. The proposer sold to another party before notice of acceptance of his offer, of which sale the proposee had notice before he accepted. The Vice-Chancellor held that the sale by the proposee to a third party before the acceptance was a withdrawal of his offer, of which the proposee had due notice.

3. *Bean v. Burbank*, 16 Maine 458 (1840), was an action in a court of law upon an offer in writing with no consideration, assigned to plaintiff, by him accepted and the money tendered. The Court refused to admit the writing in evidence upon the ground that it vas void for want of consideration.

4. *Longworth v. Mitchell*, 26 Ohio St. 334 (1875), was decided upon a question of fact as to whether the offer was accepted within the time limited. The Court, finding that it was accepted after the time given had expired, held that such acceptance constituted no contract.

5. *Eliason v. Henshaw*, 17 U.S. (4 Wheat.) 225 (1819), was an action for damages for breach of contract. The acceptance of the offer was communicated in a manner and at a place different from that proposed by defendant, and the Court held that was a departure from the terms proposed and invalidated the offer. It also expressly held that "acceptance according to the terms in which the offer is made" makes a valid contract.

6. *Faulkner v. Hebard*, 26 Vt. 452 (1854), holds that an offer or option without consideration or not under seal is not valid in law for want of consideration.

Thus it is seen that of these six cases cited and quoted from by the Court, two, *Bean v. Burbank* and *Faulkner v. Hebard*, are irreconcilably in opposition to the views the Court was then announcing. Two others, to wit, *Railroad Co. v. Bartlett* and *Eliason v. Henshaw*, expressly held that acceptance of the offer or option makes the valid contract. And the other two cases, *Dickinson v. Dodds* and *Longworth v. Miller*, have no relation or analogy whatever in decisive fact or principle to the case of *Weaver v. Burr*

and hence afford no authority for the proposition therein sought to be maintained that a tender of the cash payment within the limited time was necessary to the plaintiff's rights. The judge delivering this opinion of the Court then reviews the facts and evidence in the case before him and discovers that the acceptance of the option was not unconditional (p. 753); that notice of the acceptance, such as it was, was not received by Burr until the option had expired, and his failure to receive it in time was not through any fault of his (p. 761); that the deed the plaintiffs required him to sign was one he was not bound to execute, that he was not bound, as requested, to leave his home to carry the deed to the plaintiffs' attorney (p. 762). It is manifest, therefore, that the opinion of the majority of the Court in that case furnishes no precedent tending to establish any legal or equitable principle whatever, and the decisive facts of the case are so dissimilar to the case at bar, that the opinion is altogether *obiter dictum*. All the sound reasoning and correct application of equitable principles the case contains will be found in the dissenting opinion of Judge Snyder.

The case of *Roach v. Dickinson*, 50 Va. (9 Gratt.) 154 (1852), is also urged by defendant, as authority for his contention that plaintiff was bound, within the ninety days, to tender the cash payment and its averring a readiness to pay is not sufficient. That case has no bearing whatever upon the question here of making the tender within the ninety days. It simply holds that the covenant to pay for the land and the covenant to convey on payment "are dependent covenants, and in an action by the vendor to recover the money he must aver that he had executed or tendered the deed. The averment that he was ready and willing to deliver it is not sufficient." That is, he must make the tender before the action is brought; the same doctrine was held in 12 Gratt. 577. In the case before us the plaintiffs do offer a tender of the money on two occasions prior to the bringing of this suit. Besides, it might be further said that *Roach v. Dickinson* was in a court of law where the court was powerless to do complete justice. It could not put the plaintiff upon any terms whatever. Had the case been in equity, the court could have given each party simultaneously what he covenanted for, but in the action at law, if it gave the plaintiff anything, it was shut up to giving him a money judgment against the defendant without giving the defendant the deed which was the consideration for the money.

It is to be borne in mind that the Court is now holding that the unconditional acceptance of the option held by the plaintiff and notification of it in writing to the defendant within the ninety days converted the optional contract into a valid contract for the sale and purchase of land, binding upon both parties, and that it was not necessary then to tender the cash payment, or

aver a readiness to do so, in order to ripen the negotiation into a legal contract. But as a matter of fact the notice of acceptance contained a statement of the plaintiff's readiness to comply in all respects with the contract on its part. Inasmuch as the defendant was not found, though sought for, and plaintiff received no reply to its written notices, it could not know to whom and where the money should be paid, even if willing to pay without a deed or receipt from the defendant. The notification of its readiness to comply was all sufficient. The cases of *Rawson v. Johnson*, 1 East 203, 102 Eng. Rep. 79 (K.B. 1801); *Waterhouse v. Skinner*, 2 Bosanquet and Puller 447, 126 Eng. Rep. 1377 (C.P. 1801), and *Ferry v. Williams*, 8 Taunton 62, 129 Eng. Rep. 305 (C.P. 1817), are directly in point. They were decided by eminent judges in the King's Bench and Common Pleas and are reported in Langdell's *Select Cases on Contracts*, where *Eliason v. Henshaw* is also reported. The remarks of Lord Kenyon and Le Blanc, J., are very much to the point as to the sufficiency of the plaintiff's averring a readiness to perform without making a tender, but the length of this opinion precludes quotation from these cases. See also the correct principles stated in *Chitty on Contracts*, pp. 734, 737, and 738. These authorities are cited in the view that it was the intention of the parties, as may well be considered, that the payment of the cash payment and delivery of deed, the grantor Larkin retaining a vendor's lien, or having trust deed to secure deferred payments, should be contemporaneous events.

Another objection urged by the defendant to this bill is that the bonds of McLane and others to whom he gave the option are not tendered for the deferred payments. The option does not provide for the bonds of McLane or any one else. It only provides for "retaining the title, or otherwise as may be agreed," as a means of securing the deferred payments. But the plaintiff having within the ninety days notified the defendant that it was the assignee and holder of the option and ready to comply with all its terms, if the defendant intended to refuse accepting the plaintiff as his debtor for deferred payments, instead of McLane, etc., good faith and fair dealing required him to so notify the plaintiff, then and there, for that was an objection outside the plain terms of the contract, which if then stated might have been removed, and the defendant remaining silent, ought not to be allowed to urge it now. *Chitty on Contracts*, 310. If the defendant in answering the bill insist upon holding McLane and others as his debtors instead of the plaintiff, the plaintiff may be able to tender the bonds of McLane and others. As to his right to require it the Court expresses no opinion.

As to the power and practice of courts of chancery in decreeing specific performance and in putting the plaintiff upon terms so as to see that each party carries out his respective covenants in manner and form as agreed, see the

opinion of Judge Staples in *Cox v. Cox*, 67 Va. (26 Gratt.) 305, 308 (1875); see also the cases of *Beverley v. Lawson*, 17 Va. (3 Munf.) 317 (1812); *Lester v. Lester*, 69 Va. (28 Gratt.) 737 (1877); *Christian v. Cabell*, 63 Va. (22 Gratt.) 82 (1872); and *Neel v. Neel*, 80 Va. 584 (1885).

It should be the prime duty of courts in the administration of civil justice to compel, as far as possible, the performance of legal contracts. Upon this case as now appearing to the Court there is nothing which renders the specific performance of this contract either difficult or inequitable, and the demurrer to the bill will be overruled, and time allowed the defendant to file his answer.