Allen, P.
It seems to me that under the circumstances of this case and the facts certified by the court, as having been proved in support of the motion for a continuance made by the plaintiffs at the May term 1847, that the court erred in overruling the motion and *574 forcing them into a trial. The proceeding commenced in April 1833; but the issue on which the .cause was tried was not made up until the October term 1839. For this delay the commonwealth was as much responsible as the plaintiffs. The time from 1840' until the November term 1842 was occupied in efforts to revive in the names of the representatives of two of the plaintiffs whose death had been suggested. At the April term 1843 the plaintiffs, upon affidavit, obtained a continuance, but were warned by the court that no further continuance would be granted unless the application should be supported on strict legal grounds. The cause was afterwards continued generally until the April term 1844, when a rule was awarded against the attorney for the commonwealth, returnable at the same term, to show cause why the inquisition should not be quashed. The cause stood upon this rule, perhaps for advisement, and was regularly continued until the spring term 1846, when the rule was discharged, as appears by an entry made at the fall term 1846; and at that term an agreement was made that depositions might be taken in London, before certain officers therein named. At the succeeding term held on the 3d of May 1847, the trial was had. From this statement it would seem that although the cause had not been prosecuted with much diligence, the delays were not altogether attributable to the plaintiffs. But there are other facts showing that they were making efforts to prepare for a trial. It seems that on the 8th day of July 1841, they took in London the depositions of two witnesses upon notice, before the American consul. The depositions were taken on interrogatories at the time, but it appears from the consul’s certificate they were not taken at the place mentioned in the notice; and for this reason were objected to by the attorney for the commonwealth.
The depositions of the same witnesses were re *575 taken, and the same error was committed; the American consul certifies that they were taken on the first day of February 1843 at his office in the city of London, being the day, but not the place, mentioned in the notice. To the reading of these depositions the commonwealth’s attorney apprised the plaintiffs’ counsel he would object. The plaintiffs again, through their agent residing in the state of Kentucky, proceeded to take steps to have the depositions retaken the third time. The sum of one hundred dollars was placed in the hands of persons in New York to obtain a bill on London to defray the expenses of taking the depositions, that being the real cost of taking the two depositions in this cause in London; and notified the attorney for the commonwealth that the depositions would be taken in the city of London on the 27th March 1847. But the depositions, if taken under this notice, had not arrived in this country, or been received by the clerk of the court on the 27th of April 1847, when the cause was called for trial. It further appears from the facts certified, that some delay occurred between the October term 1846 and the April term 1847, in giving the notice and taking the necessary steps to take the depositions, owing to the fact that it was necessary to correspond with the agent of the plaintiffs who resided in Kentucky, and the absence of their attorney from his home in Kanawha county for six or eight weeks of the time. Still it would seem that notice was given to take the depositions in time to have received them by the most expeditious mode of communication between this country and England. Whatever may have been the negligence of the parties prior to the October term 1846, they seem to have proceeded with reasonable diligence after the agreement at October term 1846. Their agent resided in another state, and some time would necessarily be consumed in corresponding with *576 Mm, and in providing the means for taking depositions in England. Applications for continuances are addressed to the discretion of the court, and much must be left to the tribunal which has the parties before it, and must determine from a variety of circumstances occurring in its presence whether applications for continuances are made in good faith, or are merely intended to protract the controversy: And even when made in good faith, a reasonable degree of diligence should be exacted. The opposite party should not be kept in court and exposed to the risk of losing his testimony by the negligence of the other side.
But in this case it does not appear that the commonwealth could be subjected to any inconvenience by a delay for a term. Under the inquisition, if regularly returned and recorded,-she was entitled to the possession. The inquest of office is her evidence of title. On this she rests; her right to the land cannot be controverted by any person who does not show an interest in the subject. According to our statute, as expounded by this court in the case of French v. The Commonwealth, 5 Leigh 512, the parties suing out the monstrans de droit are plaintiffs, and must show a good right to the subject. Until they show their interest, they cannot be heard in opposition to the right of the commonwealth, as ascertained by the office found. And it does not appear that she was in a condition to suffer any injury from the loss of testimony or otherwise, by continuing the cause. That the application was made in good faith, is manifest from the previous efforts of the plaintiffs to procure this testimony at a considerable expense, and the sum expended to retake the depositions the third time; and from the offer made at the time to go into the trial, if the attorney for the commonwealth would waive the objection to the depositions.
The materiality of the testimony, if credited, is *577 clear. The inquisition finds that John Fiott, late of the city of London, long before his death, was seized of the tract of land in Cabell county, containing about eight hundred acres, part of a tract of two thousand and eighty-four acres conveyed to said John Fiott by Charles Vancouver, as by deed dated the 27th of July 1793, now of record in the County court of Kanawha county, will more fully appear; and being so seized, that he died in 1818, being at the time of his death an alien : and that he had made no disposition thereof in his lifetime.
The depositions prove that John Fiott was a subject of the king of Great Britain; that he died in England in 1818, leaving John and Philadelphia, two of the plaintiffs, his children and heirs.
The inquisition shows that John Fiott acquired title to the land by a conveyance from Vancouver, dated in July 1793, and recorded in the County court of Kanawha county. An alien may take by purchase. The conveyance clothed him with the title, and no inquest or office found divested him of the title before his death. The title thus vested in him was confirmed by the ninth article of the treaty of 1794; and upon his death in 1818, descended to his children and heirs.
It does not appear that any attempt was made to confiscate the property or divest the title of the heirs by office found during the war of 1812, or since. It is therefore unnecessary to enquire what would be the effect of the war upon such rights.
But it has been determined by the Supreme court that the termination of a treaty by war does not divest rights of property already vested under it. Society for &c. v. New Haven, 8 Wheat. R. 464. Fox v. Southack, 12 Mass. R. 143.
Upon the exhibition of the proof contained in the depositions, the said heirs would be entitled under the authority of Hannon v. Hannah, 9 Gratt. 146, to ex- *578 Mbit the copy of the deed rejected on the trial as evidence, whether properly recorded or not; as the inquisition refers to, it and both claim under it; and having thus shown their interest, could avail themselves of any objection to the inquisition upon a motion to quash, or show upon the trial their claim to the land, and that the same was superior to the right acquired by the commonwealth; as under the treaty of 1794 the lands could not be escheated on account of the alienage of their ancestor, and they were authorized to take by descent.
I think the judgment should be reversed, and the cause remanded for a new trial.
The other judges concurred in the opinion of Allen, P.
Judgment reversed.