Mu. Justice VanValkehbuksh
delivered the opinion of the court.
One ground of error is that the offence with which defendant is charged is not triable on an information filed, but only on an indictment found by a grand jury. Chapter 3042; of the Laws of the State, approved February 7, 1877, provides that every misdemeanor of which the Circuit -Court shall have jurisdiction may be tried .upon presentment or indictment by a grand jury, or upon information filed by the State attorney, or the duly authorized prose- *53 euting attorney of the Circuit Court. The counsel for defendant insists that this statute is in conflict with the Declaration of flights, and cites the 8th and 19th sections of such Declaration of Rights.
Section 8 provides that “no person shall he tried for a capital or otherwise infamous clime except in eases of impeachment, and in cases of the militia when in active service in time of war, or which the State may keep with the consent of Congress in time of peace, and in cases of petit larceny under the regulation of the Legislature, unless on presentment and indictment by a grand jury,” &c.
Section 19 is as follows: “The rights of the people to be secure in their persons, houses, papers and effects, against unreasonable seizures and searches, shall not be violated ; and no warrants issued but in probable cause, supported by oath or affirmation, particularly describing the place or places to be searched and the person or persons and thing or things to be seized.”
It will be seen that section 8 above cited applies to persons tried* for a “capital or otherwise infamous crime,” exempting by its very words certain other offences from the, necessity of a presentment by a grand jury. What then constitutes the “infamous crimes” which makes it necessary to have the action of the grand jury upon before the party accused can be tried? In Hickman’s case, (R. & M., 34,) cited in Tomlinson’s Law Dictionary, it was held by the judges that where the statute inflicted punishment for falsely accusing another of an infamous crime, such crimes only were to be deemed infamous as subjected a man to infamous punishment, or incapacitated him from being a witness.
Blackstone says “infamous persons are such as may be challenged as jurors propter delictum, and therefore never • shall be admitted to give evidence to ipform that jury with whom they were too scandalous to .associate.”
Mr. Bishop, in his ‘work on Criminal Law, in commenting upon this subject, says: “ Probably the test is to inquire whether the crime shows such depravity in the perpetrator, or such a dispositoin to pervert public justice in the courts as creates a violent presumption against his truthfulness under oath,” and, then remarks that the difficulty is in the application of the test. In this case it is not difficult, as the Legislature has fully determined it.
Section 13, Chapter 8 of Chapter 1637, provides that “whoever keeps a house of ill-fame, resorted to for * the purpose of prostitution or lewdness, shall be punished by imprisonment in the county jail not exceeding one year,” thus constituting the crime under our statutes a misdemeanor, which does not disqualify a person from becoming a witness. The law (Thomp. Dig., 335,) does name the crimes the conviction for which shall exclude the person from being a witness or giving evidence, thus establishing the meaning of the term “Infamous Crimes,” as used in section 8 of the Declaration of Rights. The offences thus named are “the crimes of murder, perjury, piracy, forgery, larceny, robbery, arson, sodomy or buggery.” Section 19 can have no reference to proceedings like these. It applies purely to the seizure and search of buildings and dwellings, and the arrest of persons at such times.
The statute authorizing misdemeanors to be tried upon information filed is not, in our opinion, in conflict with- any of the provisions of the Declaration of Rights.
The State Attorney having the right to proceed by information, the question arises under the assignment of errors whether such information was good in form and properly brought? We have no statute prescribing the forms of proceeding upon information, but they are entirely governed by the common law. It is in its structure similar to an indictment, omitting the formal commencement and conclusion, .and is not presented to the court upon the oath of the grand jury, but the facts are suggested to the court by the authorized officer on the part of the State, and may be filed without application to or leave of the court.
Sir Wm. Blackstone, in commenting upon the nature and offices of an information, says: “There can be no doubt but that this mode of prosecution by information (or suggestion) filed on record by the King’s Attorney-General, or by his coroner, or master of the Crown office, in the Court of King’s Bench, is as ancient as the common law itself. Dor as the King was bound to prosecute, or at least to lend the sanction of his name to .a prosecutor, whenever a* grand jury informed him upon their oaths that there was a sufficient ground for instituting a criminal suit, so when his immediate officers were otherwise sufficiently assured that a man had commited a gross misdemeanor, either personally against the King or his government, or against the public peace and good order, they were at liberty, without waiting for any further intelligence, to convey that information to the Court of King’s Bench by a suggestion on record and to carry on the prosecution in his Majesty’s name.” Statutes of some of the States of this Union require the information to be founded upon an affidavit of the prosecutor, but we do not find that such affidavit was necessary under the common law, the Attorney-General or Master of the Crown office acting in their official capacities. In the case at bar, the record shows that the information, which was for keeping “a house of ill-fame, resorted to for prostitution and lewdness,” was in proper form, made by the State’s Attorney and presented to the court by the grand jury, and that it was noted down upon the minutes of the court and properly filed. It was not necessary that it should have been presented by the grand jury, as the suggestion in proper form, made by the officer designated by'the law, noted.on» the minutes of the court, was sufficient, but we cannot see that the fact of its being presented to the court' by the hands of the jury would render 'it invalid. The defendant cannot claim that the information was “informal, double and insufficient.” As presented by the record in this case it reads as follows:
“The State of Florida.
“In the name and by the authority of the State of Florida:
“In the Circuit Court of the First Judicial Circuit of the State of Florida for Escambia county, at the Fall Term thereof, in the year of our Lord one thousand eight liun-dred and seventy-seven.
“Escambia County, to-wit:
“Be it remembered that William H. Milton, State Attorney for the First Judicial Circuit of the State of Florida, prosecuting for said State, being present in said court on the 27th day of September, 1877, gave the court to be informed and understand that ‘one Melissa King, late of the county of Escambia aforesaid, in the Circuit and State aforesaid, on the first day of September, in the year of our Lord one thousand eight hundred and seventy-six, then and there being in the county of Escambia, then and there at said time and on divers other days and times between that day and the filing of this information, then and there being, then and there unlawfully did keep a house of ill fame resorted to for prostitution and lewdness, and the said Melissa King certain persons us well men as women of evil name and fame and of dishonest conversation, then and on the said* other days and times there unlawfully and willingly did cause and procure to frequent and come together, and the said men -and women in the said house of her, the said Melissa King, at unlawful times, as well in the night as in. the day, then and on the said other days and times there to be v$nd remain drinking, tippling and whoring and misbehaving themselves, unlawfully did permit and yet do permit, (against the form of the statute in such cases made and pro *54 vided, to the evil example of all others in the like case offending and against the peace and dignity of the State of Florida, wherefore the said William H. Milton, the State Attorney as aforesaid, prosecuting for said State as aforesaid, prays the advice of the said court iff the premises, and that the said Melissa King may be arrested and held for trial under the foregoing information, and that a capias may issue forthwith for1 her arrest.
W. H. Milton,
State Attorney for the First Judicial Circuit of the State of Florida prosecuting for said State.”
The statute provides the penalty for keeping a “house Of ill fame restorted to for the purpose of prostitution or lewdnesá,” while the information charges the defendant With keeping the house “for the purposes of prostitution and lewdness.”
The keeping the house for either' of the offenses charged, for the purpose of prostitution or for the purpose of lewdness, would be a misdemeanor under the statute, and the charge in the information constitutes at least one offence, the proof of which would render her liable to the penalty. We cannot hold that the information was either informal, double or insufficient.
“Where the indictment charges iff a single count that the house was kept as a bawdy house, and as a disorderly house, and as a tippling house, and as a dancing house, it is not therefore multifarious, afid if sufficient of the allegation is proved to constitute an offence, there may be a conviction1.” Bishop on Crim. P. §106; Commonwealth vs. Kimball, 7 Gray, 328; State vs. Hanchett, 36 Conn., 35; State vs. Fletcher, 18 Mo., 425.
Another ground of error assigned is “that the court erred iti admitting evidence of the' reputation of the house in which the defendant resided and those who Visited it, though objected to by the defendant.”
' On the trial one Frank Touart testified that “he knew defendant; she lived on Saragosa street, in Pensacola, Es-cambia county, Florida; do not know that she keeps a house of ill fame resorted to for the purposes of prostitution and lewdness.”
“Q. Do you know the general -reputation of the house?”
This question was objected to and the objection* overruled. To which the defendant excepted.
“I do know the general reputation of the house; it was a loose house; he knew the reputation of the house for prostitution and lewdness; it was bad; it was resorted to by men and women in 1876 at all hours of the night; character of women there for virtue bad; do not know that it was resorted to for purpose of prostitution and lewdness.”
“Qi Do you know the reputation of the women who resorted there V ”
“Question objected to and objection overruled, and exception taken by defendant. Witness answered, T do not know the reputation/ ”
Other evidence of the same character was given under like objections, rulings and exceptions. Not only the reputation of the house so informed against, but also the reputation of those who visit it, may be inquired into. It would be difficult to prove particular instances of the of-fence which gives character to such a house, in order to convict its keeper. It is this very character acquired by it as the resort of prostitutes and lewd persons that makes it criminal in the eye of the law. Having established a reputation among the citizens of the district, that reputation may be proved in the same way as may the general character of an individual witness. 2 Bishop C. P. §112, &c.; State vs. McGraw, 41 N. H., 406; Commonwealth vs. Gannett, 1 Allen, 7; Ib. vs. Kimball, 7 Gray, 328; State vs. McDowell, Dudley, S. C., 346; Cadwell vs. State, 17 Conn., 467; State vs. Hand, 7 Iowa, 411.
We are aware that the courts of some of the States have held that evidence of reputation of the house as a house of ill fame is not admissible, but believe the better rule to be that adopted in Connecticut. In that State the language of the statute is precisely similar to our own, “keeping a house of ill fame resorted to for the purposes of prostitution or lewdness,” and the courts of that State have held that by force of these particular words, it is both permissible and necessary to prove the reputation of the house.
The case cited by defendant's counsel from 39 Iowa, 379, 339, State vs. Lyon, is not applicable to this case. There the indictment was found upon a statute against a lessor for leasing a building “for the purpose of prostitution and lewdness,” and the “ill fame” of the house was not in question, therefore the evidence was not admissible.
After verdict the defendant moved for a new trial upon the ground, among others, that the verdict was “unsupported by the evidence,” &c. There is no evidence in the record before us showing that the defendant kept the house the reputation of which was proven.
Frank Touart testified that he “knew defendant; she .lived on Saragosa street, Pensacola, Escambia county, Fla.; it was resorted to by men and women in 1876 at all hours of the night,” &c.
This, with some other proofs of the same character, but no more definite, is the only evidence before us in any way tending to show that defendant was connected with the keeping of any house, and it is surely insufficient to warrant a conviction upon the information.
A new trial should have been granted for this reason and therefore the judgment is reversed and remanded for further proceeding in pursuance of law. ‘
Judgment reversed. New trial ordered.