# CHARLESTON.

## MARMET CO. *v.* ARCHIBALD.

Submitted January 27, 1893.—Decided April 1, 1893.

1. LEASE—LANDLORD AND TENANT—ESTOPPEL—BAR—CORPORA-TION—NAME.

Where an action of unlawful detainer is brought by a mining company in its proper corporate name against one of its tenants, who had leased one of its tenement houses and had been engaged in mining coal for said company, although the lease was in writing and executed by said corporation under a name different from its true corporate name, assumed for its own convenience, the tenant accepting said lease and occupying said premises and paying rent thereunder is estopped from denying the power of said corporation to contract in its assumed name.

2. LEASE—CORPORATION—NAME.

A contract entered into by a corporation under an assumed name may be enforced by either of the parties, and the identity of the company may be established by the ordinary methods of proof.

3. LEASE—NOTICE.

Where a lease provides that the same shall terminate and cease, whenever the lessee from any cause ceases to work for the lessor, and it appears that the lessee had ceased to work for the lessor, before the action was commenced, said lessee is not entitled to notice to quit.

4. REVERSAL—CONTINUANCE—DISCRETION.

A court in granting or refusing a continuance of a cause ought to exercise a sound discretion, and if a party be ruled into a trial or hearing of a cause, when it appears he was entitled to a continuance, the judgment or decree against him will be reversed by an appellate court; but the appellate court will not reverse the judgment or decree of the inferior court for such reason unless its action was plainly erroneous.

J. B. MENAGER, SIMPSON & HOWRAD, and SIMPSON & THOMAS, for plaintiff in error.

BROWN, JACKSON & KNIGHT for defendant in error:

I.—*Summons.*—Code, c. 80, s. 1 ; 1 W. Va. 117.

II.—*Security for Costs.*—Code, c. 54, ss. 24, 30.

III.—*Continuance.*—12 Gratt. 576 ; 17 Gratt. 627 ; 1 W.

Va. 145 ; 7 W. Va. 447 ; 11 W. Va. 703 ; 19 W. Va. 323 ; 22 W. Va. 253 ; 27 W. Va. 32 ; Id. 510.

IV.—*Corporations.*—Code, c. 130, ss. 5, 20 ; Id. c. 13, s. 4 ; 28 W. Va. 17 ; 33 W. Va. 566 ; Giag. Rev. Stat. Ohio, ss. 3236, 3239.

V.—*Misnomer.*—Mor. Priv. Corp. § 354 ; Ang. & A. Corp. §§ 234, 647 ; Bea. Priv. Corp. § 374 ; 2 Kent. Com. 292 ; Dill. Mon. Corp. (3d Ed.) § 179 ; 18 Fed. Rep. 885 (5th Eng. & Am. Corp. Cas. p. 631) ; 92 N. C. 578 ; 69 Ill. 659 ; 19 Mich. 196 ; 2 Sandf. Ch'y 23 ; 2 Beas. 329 ; 1 Hall, 192 ; 15 B. Munro, 35 ; 7 Mass. 441–444 ; 30 Ala. 350–663 ; 10 N. H. 123 ; 29 How. Prac. 188, 191 ; 91 N. C. 464 ; 1 Mun. 177 ; Bus. Eq. 65 ; 17 Wend. 40 ; 1 Cow. 513 ; 27 Ill. 253 ; 75 Mo. 408 ; 10 Ohio 114 ; 10 Mass. 360 ; 18 La. An. 211 ; 22 Upp. Can. Q. B. 321 ; 5 Har. & J. (Md.) 122.

English, President:

This was an action of unlawful detainer brought in the Circuit Court of Putnam county, by the Marmet Company against P. Archibald on the 6th day of February, 1891, to recover the possession of a certain messuage and tenement situated in Pocatalico district, Putnam county, W. Va., known and designated as "No. 75" of the plaintiff's coal property in said district. On the 25th day of February, 1891, the defendant, by his attorney, moved to quash the summons issued in the cause, which motion was overruled, and thereupon the defendant plead not guilty ; and on his motion the cause was continued on account of the absence of L. W. Britton, J. M. Ingram, and Lida Nunley, witnesses for the defendant, and at his costs. On the 6th day of April, 1891, the defendant tendered a plea denying the existence of the plaintiff as a corporation, as alleged in the summons, which plea was sworn to, to the filing of which the plaintiff objected, which objection was overruled, and the same was ordered to be filed, and on the same day the cause was submitted to a jury, and on the 7th day of April, 1891, said jury returned a verdict for the plaintiff for the premises in the summons described ; and thereupon the defendant moved the court to set aside the verdict, and grant

him a new trial, because the same was contrary to the law and the evidence, which motion was overruled, and the defendant excepted, and judgment was rendered upon said verdict in favor of the plaintiff. On the 9th day of April, 1891, the defendant suggested that the plaintiff was a non-resident of the State of West Virginia, and required security for costs, which suggestion and motion were considered by the court and overruled; and the defendant excepted to the action of the court in refusing to require security for costs, and also in refusing to continue said cause, which order appears to have been omitted at a former day, and was entered as a *nunc pro tunc* order, from which rulings and judgment of the court the defendant obtained this writ of error.

At the time this cause was called for hearing in this Court an affidavit was filed showing that possession of the property in controversy had been delivered to the plaintiff, so that the object of the suit in the Circuit Court had been accomplished, and a motion was predicated upon the facts stated in the affidavit to dismiss this writ of error, which motion was made by counsel for the defendant in error. This motion should not prevail, for the reason that the plaintiff in error is entitled to the judgment of this Court upon the status existing at the time the judgment was rendered against him, and upon the rulings and action of the Circuit Court in rendering the same; and the mere fact that the tenant had removed from the premises in controversy would not prevent him from having the correctness of the judgment, of which he complains, passed upon by this Court.

The first error assigned by the plaintiff in error relates to the action of the Circuit Court in overruling the motion to quash the summons issued in the case. The summons appears to be in proper form, and to have been properly served. Section 1 of chapter 89 of the Code requires that the premises shall be described with convenient certainty. Was this requirement of the statute complied with in this instance?

The summons describes the property unlawfully withheld "as a certain messuage and tenement situate in Poca-

talico district, Putnam county, West Virginia, known and designated as 'No. 75' of the plaintiff's coal property in said district." Now, in legal acceptation, the word "messuage" is defined as "a dwelling house, with the adjacent buildings and curtilage;" and the word "tenement;" as property held by a tenant. So that we may construe the description contained in said summons to designate a certain dwelling house, with its curtilage and appurtenances, known as "No. 75" of the plaintiff's coal-property, situated in Pocatalico district, in Putnam county, West Virginia. We are to presume from this that the company's tenement houses were numbered, and the summons gives, not only the number of the house, but the district, county, and state in which it is situated.

In the case of *Hawkins* v. *Wilson*, 1 W. Va. 117, it was held that a summons which described the property as "a certain house, and its appurtenances, in Monongalia county, * * * being the same purchased by said plaintiff from said defendant, and the same house now in the occupancy of said defendant," described the property "with convenient certainty," and comparing the case at bar with that case, we can but say that the description in this case is more definite and certain than the description in that case; and our conclusion is that the property in this case was described with that "convenient certainty" prescribed by the statute, and that the Circuit Court committed no error in overruling the motion to quash the summons.

The second assignment of error claims that the court erred in refusing to require the plaintiff to give security for costs, as required of non-residents by the law of this State. Section 2 of chapter 138 of the Code provides among other things that, after sixty days from such suggestion, that the plaintiff is a non-resident, the suit shall by order of the court be dismissed, unless before the dismission the plaintiff be proved to be a resident of the State, or security be given before said court, *etc.* Did the Circuit Court err in refusing to require the plaintiff to give security for costs, under the state of facts diclosed by the plaintiff's evidence?

Section 24 of chapter 54 of the Code provides that every such corporation having its principal office or place of

business outside of this State shall within thirty days after organizing by power of attorney duly executed appoint some person residing in this State to accept service on behalf of said-corporation, upon whom service may be had of any process or notice, and to make return of its property in this State for taxation. It also provides for the recording of said power of attorney in the clerk's office of the County Court of the county, in which said attorney resides, and that the same shall be filed and recorded in the office of the secretary of state, and that the admission to record of such power of attorney shall be deemed evidence of compliance with the requirements of said section. Said section further provides that any corporation failing to comply with said requirements within six months after the passage of said act should forfeit not less than two hundred dollars nor more than five hundred dollars, and should moreover during the continuance of such failure be deemed a non-resident of this State, *etc.*

It appears from the record that said corporation had recorded its articles of incorporation, as required by said section 24 of chapter 54 of the Code, and had also by power of attorney duly recorded appointed an attorney in fact in Putnam county in pursuance of the requirements of said section soon after commencing to do business in said county and before the institution of said suit; and, not having failed to comply with the requirements of said section, it would neither be subject to the pecuniary forfeiture therein prescribed, nor be liable to be deemed a non-resident of the State. The plaintiff, having, as we have seen, complied with the requirements of the statute, would under section 30 of said chapter be entitled to the same rights and privileges and be subject to the same regulations, restrictions and liabilities, that are conferred and imposed by the fifty second, fifty third and fifty fourth chapters of the Code, and by chapter 20 of the Acts of 1885, on corporations chartered under the laws of this State.

Now, it is true that under section 2 of chapter 138 of the Code, if there be a suggestion that the plaintiff is a non-resident, after sixty days from such suggestion the suit shall be dismissed, unless before the dismission the plaintiff

be proved to be a resident of the State, or security be given before said court or the clerk thereof for payment of costs, *etc.*

In this case, however, the record shows that the plaintiff was entitled to be regarded as a resident of the State of West Virginia, and for that reason the Circuit Court committed no error in refusing to require the plaintiff to give security for costs.

The next error assigned and relied upon by the defendant is the action of the Circuit Court in refusing to continue the case upon the motion of the defendant.

Allen, P., in delivering the opinion of the Court in the case of *Fiott* v. *Com.*, 12 Gratt. 576, says : "Applications for continuances are addressed to the discretion of the court, and much must be left to the tribunal which has the parties before it; and it must determine, from a variety of circumstances occurring in its presence, whether applicacations for continuances are made in good faith, or are merely intended to protract the controversy, and, even when made in good faith, a reasonable degree of diligence should be exacted. The opposite party should not be kept in court, and exposed to the risk of losing his testimony, by the negligence of the other side."

This Court held in the case of *Buster* v. *Holland*, 27 W. Va. 511 (fifth point of syllabus): "A court, in granting or refusing a continuance of a cause, ought to exercise a sound discretion, and, if a party be ruled into a trial or hearing of a cause when it appears he was entitled to a continuance, the judgment or a decree against him will be reversed by an appellate court ; but the appellate court will not reverse the judgment or decree of the inferior court for such reason unless its action was plainly erroneous."

So also in the case of *Dimmey* v. *Railroad Co.*, 27 W. Va. 32 (third point of syllabus) it was held : "To entitle a party to a continuance on the ground of the absence of a witness, it must be shown that the party has used due diligence to procure the attendance of the witness, that he is material, that the same facts can not be proved by any other witness in attendance, and that the party making the application can not safely go to trial in the absence of such witness."

Again, in the case of *Riddle* v. *McGinnis*, 22 W. Va. 254 (tenth point of syllabus) this Court held: "A motion for a continuance is addressed to the sound discretion of the court; and although the applicant may, by his own oath, show a *prima facie* case entitling him to a continuance on account of the absence of a material witness, yet if from the circumstances of the case, or from the statements of the applicant, the court is satisfied that the real purpose of the motion is to evade or delay the trial, and not to prepare for it, the motion ought to be overruled."

Other cases might be cited, showing that the question of the propriety of the action of the Circuit Court in granting or refusing continuances has been frequently brought before this Court. Those we have cited however are sufficient to clearly indicate that upon a question of this character a great deal must be left to the sound discretion of the Circuit Court, acting upon the circumstances of each particular case.

When we look to the circumstances with which the Circuit Court was confronted at the time it refused to continue this case, we find that the case was on the docket on the fourth Monday in February, 1891, for trial, and also thirty seven other like actions, brought by the same plaintiff against thirty seven other defendants;—that all of said cases were called for trial on the third day of that term, and the plaintiff was then ready for trial in all of said cases, including this one, and pressing for a trial then, and the defendants in all of said cases had summoned as witnesses for defendant L. W. Britton, J. M. Ingram, and Lida Nunley, and no more, and none of said witnesses were present at that time;—that the defendants in all of said cases claimed and showed that the said three witnesses were important and material for the defence in each of said cases;—that the same facts could not be proved by any other witnesses, and that the defendants could not safely go to trial in any of said cases in the absence of either of said witnesses, but if said witnesses were present the defendants would be ready for trial in all of said cases, including this case; and thereupon all of said cases, including this case, were continued, on the motion of the defendants, for the absence of said

three witnesses; and it was then claimed that said Lida Nunley was not then physically able to attend court;—that when said causes were continued at said February term the court announced that a special term would be held on the 6th of April, especially to try said cases;—that said witnesses resided at Raymond City, about seven miles from the courthouse, and had been duly summoned. At the special term in April the defendant relied on the absence of one George W. Cauley, who had been summoned as a witness, and who was absent on account of sickness, whom defendant stated was a material witness for him on the trial of the case, and that he did not know that he could prove the same facts by any other witness, and that he could not go safely into the trial of the case in his absence; and that said Cauley was not absent by any procurement or connivance of his. It however appears that said Cauley was seen that morning, three fourths of a mile from his house on his way from a doctor's, and that he sent word that he was too sick to attend court.

At the time then, that this continuance was applied for, the court was in possession of the following facts: The defendants had demanded an increase of pay for their services in mining, and, the same having been refused, they had ceased to work for the plaintiff but were retaining possession of the houses needed by the plaintiff for employes, who were ready and willing to take their places without an increase of wages. The leases, on their faces, provided that they should terminate, whenever the lessee from any cause ceased to work for said company; so that a speedy trial, which might result in their eviction, would not have a tendency to aid them in enforcing a compliance with their demands, and delay might fairly be presumed to be the object of the motion. The court was aware of the distance the absent witnesses were from the courthouse, and of their facilities for reaching the same; that although it was stated, that the witness Cauley was sick and unable to attend Court at that term, he was seen three fourths of a mile from his home on that morning coming from the doctor's;—that the cases were continued at the former term on account of the absence of the other three witnesses, and

that no effort had been made to take the deposition of the female witness, although her condition indicated the propriety of such a course, if they desired her testimony.

The court refused the continuance, it is presumed, because the circumstances indicated that the motion was made merely for delay; and, if we are correct in this presumption, the fact that the witnesses Britton and Ingram, although present during the trial, were neither sworn nor examined by the defendant, does not detract from the correctness of the conclusion reached by the Circuit Court. In view of these circumstances, we can not say that the action of the Circuit Court in refusing a continuance was erroneous. So far has the discretion of the courts with reference to continuance been extended that in one state— North Carolina—in the case of *McQueen* v. *Bank,* the Supreme Court of that state has held that "The refusal to grant a continuance is discretionary with the trial-court, and will not be reviewed on appeal." 16 S. E. Rep. 270.

The fourth assignment of error claims that the court erred in admitting the charter of plaintiff and permitting the same to be read to the jury as evidence of its incorporation. The paper read to the jury was an exemplified copy of the charter of the Marmet Company, duly certified by the secretary of state of the state of Ohio. Attached thereto was the certificate of the secretary of state of West Virginia that the Marmet Company, a corporation created under the laws of the state of Ohio, had filed in his office a duly certified copy of its charter, together with a copy of the laws of the state of Ohio, under which said corporation was formed, both of which certificates were under the seal of their respective states, and also the certificate of the clerk of the County Court of Putnam county, West Virginia, that said articles of incorporation were admitted to record in his office together with the certificates and acknowledgments thereto annexed. This copy appears to have been duly attested as prescribed by our statute, and, so far as I can perceive, the court committed no error in allowing it to go before the jury. Besides, this Court has held in the case of *Manufacturing Co.* v. *Bennett,* 28 W. Va. 16, that "a party who has contracted with a corporation as

such, can not afterwards raise the objection that, at the time he entered into such contract, the corporation was not legally incorporated, if such corporation could constitutionally exist."

The fifth and sixth assignments of error may be considered together, as they both rely on the misnomer of the corporation. The former is to the action of the court in allowing the plaintiff to read to the jury the contract of lease made by the Marmet Mining Company with the defendant, and the latter refers to the action of the court in permitting the plaintiff to read to the jury the notice and return thereon given by the Marmet Mining Company to the defendant, requiring him to surrender possession of the premises in the summons mentioned.

It was shown by the testimony that there was no such company at the Marmet Mining Company; that the plaintiff had other works, located in Ohio and elsewhere; and that plaintiff carried on business in the name of the Marmet Mining Company as a matter of convenience, in order to keep its accounts of the operation of its works at Raymond City separate from other works carried on by it. The proof is full and complete as to the identlty of the Marmet Company with the Marmet Mining Company, so far as its operations at Raymond City were concerned. It is true the deeds for the coal-property were made to the Marmet Company for the property on which the house in controversy was located, but the lease was made in the name of the Marmet Mining Company, and was so accepted by the defendant. It also appears by the evidence that the defendant was living in the house described in the summons, located on the coal-property owned by the Marmet Company, and that he was one of the employes engaged in mining coal on said property, and that he ceased to work, when the other miners did; that, while he was working, the rent for said house was deducted from his pay by the Marmet Mining Company. He contracted for the house and for the pay for his labor with the Marmet Mining Company, and he could not be heard to say that the Marmet Mining Company could not give him notice to quit.

On the face of the lease, however, it was provided, that the lease should terminate and close whenever the said lessee from any cause ceased to work for said company. Our Code, c. 93, § 5, provides, among other things, that "notice shall not be necessary from or to a tenant whose term is to end at a certain time." The tenant in this case had it in his power to fix that time by the terms of the lease, and he did so fix it and was not entitled to notice to quit. We find the law stated as follows in *Morawitz on Corporations* (2d Ed. § 354): "The identity of a corporation is no more affected by a change of name than the identity of an individual. The agents of a corporation have no implied authority to use any name except that indicated by the company's charter, in contracting on the company's behalf; but the use of a wrong name is ordinarily not material, if the corporation is really intended by the parties. * * * A contract entered into by a corporation under an assumed name may be enforced by either of the parties. If the contract is expressed in writing, and the identity of the corporation can be ascertained from the instrument itself, the misnomer is wholly unimportant; but, if necessary, other evidence may be introduced in order to establish what company was intended. * * * If a notice is sufficient to serve its purpose, it will be sufficient, in law, although it contains a misnomer." So, also, in 4 Amer. & Eng. Enc. Law, p. 204, it is said: "Although the name of a corporation may be changed, the identity of the corporation is not affected. A contract entered into under an assumed name may be enforced by either of the parties. * * * The identity of the company may be established by the ordinary methods of proof."

Again we find that Beach, Priv. Corp. § 374, says: "A misnomer of the corporation does not invalidate a deed, if it can be collected from the face of the deed, aided by extrinsic evidence, what corporation is intended."

The law is stated Dill. Mun. Corp. § 179, as follows: "A misnomer or variation from the precise name of the corporation, in a grant or obligation by or to it, is not material, if the identity of the corporation is unmistakable, either from the face of the instrument, or from the averments and proofs."

In the case under consideration there can be no question, that the Marmet Company was doing business under the assumed name of the Marmet Mining Company for its own convenience. The deeds show that the coal property, on which the mining operations were being prosecuted, was the property of the Marmet Company. Of this the defendant had constructive notice, and yet he made his contract for labor and house rent with said company under the assumed name of the Marmet Mining Company; and, as we have seen by the authorities above cited, such contract can be enforced by either party.

The seventh assignment of error claims that the court erred in allowing the plaintiff to read to. the jury the two deeds, by which it derived title to the coal-property. We, however, can see no error in this, as said deeds were necessary to show the right to the possession in the Marmet Company, which the plaintiff was compelled to do in order to make out its case.

A motion was made to set aside the verdict because the same was contrary to the law and the evidence, and this motion, for the reasons before stated, we think was properly overruled.

The conclusion we have reached is, that. the judgment complained of must be affirmed with costs and damages to the defendant in error.

AFFIRMED.