PEOPLE OF PORTO RICO, Plaintiff and Appellee, *v.* MANUEL DOMÍNGUEZ PÉREZ, Defendant and Appellant.

No. 3603. Argued April 2, 1929.—Decided May 29, 1929.

*J. Valldejuli Rodríguez* for the appellant. *José E. Figueras* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Manuel Domínguez Pérez was accused of the offense defined and punished by section 288 of the Penal Code. Having been convicted and sentenced to pay a fine of fifty dollars or suffer one day in jail for each dollar not paid, he appealed to this court and alleged the commission of five

errors, which we shall consider in the order in which they were assigned.

The first is that the complaint does not charge the commission of a public offense because the act of renting "the house No. 61 Tetuán street of this city knowing that the tenant was going to use the said house for the purpose of lewd assignations" does not constitute the offense defined in section 288 of the Penal Code.

That statute establishes four ways of committing the offense, *i. e.,* (1) by keeping any disorderly house or any house for the purpose of assignation; (2) by keeping any house of public resort, by which the peace, comfort or decency of the immediate neighborhood is habitually disturbed; (3) by keeping any inn in a disorderly manner; (4) by letting any apartment or tenement knowing that it is to be used for the purpose of assignation or prostitution.

The fourth manner of committing the offense is the one to be considered here. In the Spanish text the words *"habitación"* and *"casa de vecindad"* are used. The English text uses the words "apartment" and "tenement." In the complaint the word "house" is used.

In our opinion, consulting the English text which is the original, the conclusion is immediately reached that the assignment has no foundation. In Bouvier's Law Dictionary the word "tenement" is defined as follows:

"TENEMENT (from Lat. *teneo,* to hold). Everything of a permanent nature which may be holden.

"House, or homestead. Jacob. Rooms let in houses. See APARTMENT; FLAT.

"Property held by a tenant. Marmet Co. v. Archibald, 37 W. Va. 778, 17 S. E. 299.

"In its most extensive signification, tenement comprehends everything which may be *holden,* provided it be of a *permanent* nature; and not only lands and inheritances which are holden, but also rents and profits *a prendre* of which a man has any frank tenement, and of which he may be seized *ut libero tenemento,* are included under this term; Co. Litt. 6 *a.;* 2 Bla. Com. 17; 1 Washb. R. P.

10. In its technical sense it will include an advowson; 3 Atk. 460; 4 Bing. 290; tithes; 1 Stra. 100; 6 Ad. & El. 388; a dignity; 30 Ch. Div. 136; 2 Salk. 509. It includes a wharf; People v. Kelsey, 14 Abb. Pr. (N. Y.) 372. The word *tenements* simply, without other circumstances has never been construed to pass a fee; Wright v. Page, 10 Wheat. (U. S.) 204, 6 L. Ed. 303. See 1 B. & Ad. 161; Com. Dig. *Grant* (E. 2), *Trespass* (A. 2).''

And in Words and Phrases it is said:

''A 'tenement house' is defined to be a dwelling house or an apartment in a building used by one family, often, in modern usage, an inferior dwelling house, rented to poor persons, or a dwelling erected to be rented. State v. Rowland Lumber Co., 69 S. E. 58, 59, 153 N. C. 610.'' Words and Phrases, vol. 4, p. 877, ed. 1914.

On the same page of the same work a difference is established between the meaning of ''apartment'' and ''tenement'' as follows:

''The term 'apartment or community house' is not synonymous with 'tenement,' in a covenant precluding the erection of any tenent, apartment, or community house. McClure v. Leycraft, 90 N. Y. Supp. 233, 234, 97 App. Div. 518.''

The second assignment is that the court erred in allowing the district attorney to ask the following question: ''For what business, if you know, was that house rented by Pérez Domínguez to Capre?''

It appears from the transcript that counsel for the accused ''objected to the question because it led the witness to a conclusion.''

Even supposing that the form of the question was not what it should have been, inasmuch as the answer given by the witness did not tend to favor the prosecution, the error, if any, was not prejudicial.

The third assignment is without merit. It was lawful to allow witness Juan E. Miranda to refer to a conversation between him and the accused in which the latter admitted certain facts that undoubtedly were prejudicial to him, but which

did not constitute a real confession. Therefore the rule governing the admission of confessions was not applicable.

As a basis of the fourth assignment and in support of the contention that the offense had prescribed the appellant referred to certain testimony of some witnesses, but as there was other testimony which fixed the date of the commission of the offense within the time allowed by law for instituting a prosecution, this last testimony should prevail in view of the action of the district court, especially when the first did not refer to the date when the house was rented to Rafael Capre, but to the ill fame of the house.

The fifth and last assignment is that "The court rendered judgment contrary to the evidence presented."

We have examined the evidence and find it abundant not only as regards the ill fame of the house, but as to repeated and specific acts of prostitution committed therein in such a manner as to constitute the only occupation of the unfortunate women who lived in or visited it.

With respect to the first kind of evidence, it seems well to quote the following jurisprudence:

"Whether or not the reputation of the house, itself, as one of ill-fame may be shown, is a question about which the cases are somewhat conflicting; but we think that the weight of authority, and the better reason, support the affirmative of the proposition. It has been so held in a large number of states, and the following are some of the cases which so hold: *Sylvester* v. *State*, 42 Tex. 496; *Morris* v. *State*, 38 Tex. 603; *Allen* v. *State*, 15 Tex. App. 321; *State* v. *McDowell*, Dud. (S. C.) 346; *King* v. *State*, 17 Fla. 183; *O'Brien* v. *People*, 28 Mich. 213; *Betts* v. *State*, 93 Ind. 375; *Graeter* v. *State*, 105 Ind. 271; *State* v. *Brunell*, 29 Wis. 435; *State* v. *Smith*, 29 Minn. 193; *Territory* v. *Bowen*, 2 Idaho 607; *Drake* v. *State*, 14 Neb. 535; *Cadwell* v. *State*, 17 Conn. 467; *Commonwealth* v. *Kimball*, 7 Gray, 328. (See also Moore's Criminal Law, par. 1072, and cases there cited to support the statement in the text that 'a house of ill-fame may be proved to be such by direct evidence, or by reputation, or by circumstances—as that the inmates were reputed to be prostitutes.') We are much more impressed with the reasoning and consistency of the cases

which hold that evidence of the reputation of a house of prostitution is admissible than with the reasoning and consistency of those cases which hold differently; for the latter, while excluding evidence of the reputation of the house, permit evidence of the reputation of the inmates of the house for the purpose of showing that it is a house of prostitution—and this seems to be a distinction without much difference." *Demartini* v. *Anderson,* 127 Cal. 33, 35.

On the matter of the knowledge of the renter of the purposes for which the house was going to be used and was used the evidence is contradictory. The court adjusted the conflict and it has not been shown that it was influenced by passion, prejudice or partiality or that it committed manifest error.

The judgment appealed from must be affirmed.