El Pueblo de Puerto Rico, demandante y apelado, *v.* Manuel Domínguez Pérez, acusado y apelante.

No. 3603.—*Sometido:* Abril 2, 1929. *Resuelto:* Mayo 29, 1929.

*J. Valldejuli Rodríguez,* abogado del apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Manuel Domínguez Pérez fué acusado como autor del delito previsto y castigado en el artículo 288 del Código Penal. Condenado a pagar una multa de cincuenta dólares o a sufrir un día de cárcel por cada dólar que dejare de satisfacer, apeló para ante esta Corte Suprema alegando que se habían cometido cinco errores que estudiaremos en el orden en que fueron señalados.

Es el primero que la acusación no imputa la comisión de un delito público, porque el hecho de arrendar como en ella se dice ''la casa No. 61 de la calle Tetuán de esta ciudad, a sabiendas,'' de que el arrendatario ''iba a dedicar dicha casa, como la ha dedicado, para citas deshonestas,'' no constituye el delito previsto en el artículo 288 del Código Penal.

Dicho artículo establece cuatro formas de comisión del delito, a saber: 1, teniendo establecida una casa escandalosa o dedicada a citas deshonestas; 2, teniendo una casa de recreo en la cual habitualmente se perturbare la tranquilidad, bienestar o decoro del inmediato vecindario; 3, te-

niendo un mesón en que se promovieran desórdenes constantemente, y 4, arrendando cualquier "habitación o casa de vecindad," "apartment or tenement," sabiendo que va a dedicarse a citas deshonestas o a la prostitución.

La cuarta forma del delito es la que debe estudiarse aquí. En el texto castellano se usan las palabras "habitación" y "casa de vecindad," en el inglés se emplean las palabras "apartment" y "tenement." En la acusación se dice "casa."

A nuestro juicio consultado el texto inglés que es el original, se concluye en seguida que no existe el error que se alega.

La significación de la palabra "tenement", según Bouvier, es como sigue:

"*Tenement* (del lat. *teneo,* tener). Todo aquello de naturaleza permanente que puede ser tenido.

"Casa u hogar seguro. Diccionario Jacob. Habitaciones alquiladas en una casa.

"Propiedad poseída por un arrendatario. Marmet Co. v. Archibald, 37 W. Va. 778, 17 S.E. 299.

"En su significación más amplia, comprende todo aquello que puede ser *tenido,* siempre que sea de naturaleza *permanente;* y este término no sólo significa terrenos y heredades que son tenidos, sino también las rentas y ganancias *a prendre* de que un hombre disfruta una tenencia franca y de los cuales puede estar en posesión *ut libero tenemento;* Co. Litt. 6 a; 2 Bla. Com. 17; 1 Washb. R.P. 10. En su significación técnica incluye también un patronato; 3 Atk. 460; 4 Bing. 290; diezmos; 1 Stra. 100; 6 Ad. & El. 388; una dignidad; 30 Ch. Div. 136; 2 Salk. 509. Incluye también un muelle; 14 Abb. Pr. 372. La palabra 'tenement' por sí sola, sin otras circunstancias que la rodeen, nunca ha sido interpretada como que transmite un feudo; 10 Wheat. 204. Véanse 1 B. & Ad. 161; Com. Dig. *Grant* (E 2), *Trespass* (A 2)." Bouvier's Law Dictionary, tomo 3, pág. 3257, ed. 1914.

Y en Words and Phrases, se dice:

"Un 'tenement house' ha sido definido como una casa de vivienda o un departamento en un edificio usado por una familia, y con frecuencia, según el uso moderno de esta palabra, una casa de vivienda

de inferior categoría, alquilada a gente pobre, o una casa construida para ser alquilada. State v. Rowland Lumber Co., 69 S.E. 58, 59, 153 N.C. 610." Words and Phrases, tomo 4, pág. 877, ed. 1914.

La misma obra, en la misma página, establece la dife- rencia de lo que se entiende por "apartment" y "tenement," diciendo como sigue:

"Las palabras 'apartment or community house' no son sinónimas de 'tenement,' en una cláusula que excluye la fabricación de cualquier clase de tenement, apartment, or community house.' McClure v. Leaycraft, 90 N. Y. Supp. 233, 234, 97 App. Div. 518."

■ El segundo error alegado se señala así: "Haber permitido la corte que el fiscal hiciera la siguiente pregunta: '¿Para qué negocio, si usted lo sabe, fué arrendada esa casa por Pérez Domínguez a Capre?' "

De la transcripción aparece que el abogado del acusado "se opuso a la pregunta por traer la misma al testigo a una conclusión."

Aun suponiendo que la forma de la pregunta no fuera la que debió ser, toda vez que la contestación dada por el testigo no tendió a ayudar al fiscal, el error, de haberse co- metido alguno, no fué perjudicial.

■ No existe el tercero de los errores señalados. Era legal permitir al testigo Juan E. Miranda que se refiriera a cierta conversación que tuvo con el acusado en la que éste admitió ciertos hechos que le perjudicaban indudablemente pero que no constituyen una verdadera confesión. En tal virtud no era aplicable la regla que rige con respecto a la admisión de confesiones.

■ Para fundar el cuarto error y sostener que el delito estaba ya prescrito, se refiere el apelante a ciertas manifes- taciones de algunos testigos, pero como existen otras decla- raciones que fijan la fecha de la comisión del delito dentro del tiempo en que la ley permite que se persiga, estas últi- mas deben prevalecer atendida la actuación de la corte de distrito, especialmente cuando las primeras no se refieren a

la fecha del arriendo a Rafael Capre sino a la mala fama de la casa.

■ El quinto y último error se formula así: "Haber dictado sentencia la corte contraria a la evidencia presentada."

Hemos examinado la prueba y es abundante no sólo en cuanto a la mala fama de la casa sino en cuanto a repetidos actos concretos de prostitución en ella realizados en forma tal que constituían el único empleo de las desgraciadas mujeres que en ella habitaban o a ella se acogían.

Con respecto a la primera clase de prueba parece conveniente citar la jurisprudencia que sigue:

"Si puede o no probarse la reputación de una casa en sí, como de mala fama es una cuestión sobre la cual los casos están en conflicto en algo; pero creemos que el peso de las autoridades y el mejor criterio sostienen la afirmativa de la proposición. Así se ha resuelto en un gran número de estados y los siguientes son algunos de los casos que sostienen esa teoría: Sylvester v. State, 42 Tex. 496; Morris v. State, 38 Tex. 603; Allan v. State, 15 Tex. App. 321; State v. McDowell, Dud. (S.C.) 346; King v. State, 17 Fla. 183; O'Brien v. People, 28 Mich. 213; Betts v. State, 93 Ind. 375: Greater v. State, 105 Ind. 271; State v. Brunell, 29 Wis. 435; State v. Smith, 29 Minn. 193; Territory v. Bowen, 2 Idaho, 607; Drake v. State, 14 Neb. 535; Cadwell v. State, 17 Conn. 467; Commonwealth v. Kimball, 7 Gray. 328. (Véase también Moore's Criminal Law, párrafo 1072, y casos allí citados en apoyo de la aseveración contenida en el texto de que 'puede probarse la existencia de una casa de mala fama mediante evidencia directa o por su reputación u otras circunstancias— como, por ejemplo, que las personas que allí residían estaban reputadas como prostitutas.') Hemos quedado mucho más impresionados con el razonamiento y la consistencia de los casos que sostienen que prueba de la reputación de un burdel es admisible, que con el razonamiento y la consistencia de aquellos que resuelven lo contrario; pues los últimos casos si bien excluyen prueba respecto a la reputación de la casa, admiten prueba con relación a la reputación de las personas que en ella residen a fin de demostrar que es un burdel—y ésta parece ser una distinción sin que haya mucha diferencia." *Demartini v. Anderson*, 127 Cal. 33, 35.

En cuanto al conocimiento del arrendador en relación con

los fines para los cuales se iba a destinar y se destinó en efecto la casa, la prueba es contradictoria. La Corte resolvió el conflicto y no se ha demostrado que actuara movida por pasión, prejuicio o parcialidad, ni que cometiera error manifiesto alguno.

*Debe confirmarse la sentencia recurrida.*