EL PUEBLO DE PUERTO RICO, demandante y apelado, v. TELÉS-
FORO PÉREZ, acusado y apelante.

No. 3758.—*Sometido:* Junio 4, 1929.   *Resuelto:* Julio 12, 1929.

*Eduardo López Tizol*, abogado del apelante; *R. A. Gómez*, abogado de *El Pueblo*, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Telésforo Pérez fué acusado y condenado como autor de un delito de abuso de confianza. No conforme con la sentencia, apeló para ante este tribunal, señalando en su alegato la comisión de diez y seis errores.

Por el primero sostiene que los hechos alegados en la acusación no constituyen un delito público.

La acusación, en lo pertinente, dice:

"El referido Telésforo Pérez en el período comprendido desde el mes de agosto a noviembre, A. D. 1924, y en la municipalidad de San Juan, P. R. en el Paseo Covadonga, comprendido en la parte Sur de una línea divisoria que, partiendo del Palacio de Santa Catalina, por toda la calle de Allen y a través de la Avenida Ponce de León, termina en el puente de Martín Peña, que forma parte del Distrito Judicial del 2° Distrito de San Juan, P. R., ilegal, voluntaria y maliciosamente y con intención de defraudar, como defraudó a la Ice Service Co., compañía o corporación autorizada legalmente para hacer negocios en Puerto Rico, en ocasión de desempeñar el puesto de vendedor de libros de cupones de la Ice Service Co., se apropió la suma de seiscientos diez y ocho dollars con cincuenta centavos, importe o valor de sesenta y cinco libros de cupones, usándola en su propio beneficio y para fines ajenos al legítimo desempeño de su cargo, defraudando de esta manera a la mencionada Ice Service Co. en la suma ya indicada de seiscientos diez y ocho dollars con cincuenta centavos."

Según el artículo 445 del Código Penal, es abuso de confianza la fraudulenta sustracción o malversación de bienes, por una persona a quien habían sido confiados, y aquí se imputa a una persona, el acusado Pérez, el haberse apoderado fraudulentamente del valor de ciertos libros de cupones que

le fueron confiados para ser vendidos y entregar su importe a su dueña la Ice Service Co. La acusación es suficiente. La relación fiduciaria entre el acusado y la perjudicada se alega de modo específico en ella cuando se dice que tanto la entrega como la sustracción tuvieron lugar en ocasión de desempeñar el acusado· el puesto de vendedor de libros de cupones de hielo de la perjudicada.

El segundo error se formula así: ''La corte cometió error al no ordenar el sobreseimiento de este caso por no haber sido leída ni presentada la acusación en tiempo.''

La argumentación del error es tan confusa que no deberíamos detenernos a examinarlo.

El señalamiento se limita a no haberse presentado ni leído en tiempo la acusación. El argumento se extiende a la no celebración del juicio dentro del término de ciento veinte días.

En los autos no se incluye la moción de sobreseimiento, constando sólo que dicha moción fué presentada y declarada por la corte sin lugar.

No hay base, pues, para discutir y resolver si el juicio se celebró o no en tiempo, y en cuanto a si en tiempo se presentó la acusación, bastará decir que así resulta de las propias manifestaciones del apelante, ya que dice que fué arrestado el 13 de marzo de 1925 y ésa es precisamente la fecha de la acusación. No hay constancia separada en los autos de cuándo fuera que se presentara o archivara la acusación en la corte, si es que no lo fué en esa fecha. Sólo consta que se leyó el 28 de noviembre de 1925, habiéndose celebrado el juicio el 15 de enero de 1926.

El acusado pidió que se hiciera más específica la acusación en seis extremos. La corte negó la petición. Por su tercer señalamiento sostiene el acusado que la negativa fué errónea.

A nuestro juicio no se ha demostrado abuso alguno de discreción por parte de la corte. La acusación es todo lo

amplia y detallada que pueda exigirse. Y como discutir punto por punto las especificaciones solicitadas, alargaría de modo extraordinario esta opinión sin beneficio para la jurisprudencia, nos limitaremos a lo dicho anteriormente.

Por el cuarto error se impugna la constitución del jurado que intervino en la causa.

El apelante sostiene que él tenía derecho a que el panel del que debía formarse el jurado que había de juzgarlo, se extrajera de la urna conteniendo los nombres .de los trescientos jurados del distrito, y que eso no se hizo porque se había extraído de la propia urna otro panel para actuar en otra de las secciones de la corte.

Sabido es que la Corte de Distrito de San Juan se compone de tres jueces que actúan independientemente. En 1925 la Legislatura decretó una ley—la No. 105—cuya sección 4 dice:

"Sec. 4.—La distribución del trabajo de dicha corte entre los jueces o salas de al misma, así como el orden para el despacho de los asuntos, se harán de acuerdo con los Códigos de Enjuiciamiento Civil y Criminal y de un Reglamento que deberá ser redactado por un Concejo Judicial, compuesto por el Attorney General y por los tres jueces de la Corte de Distrito."

En el ejercicio de sus facultades, el 23 de noviembre de 1925, el "Concejo Judicial" adoptó la siguiente regla:

"Debido al gran número de casos criminales que están pendientes de verse ante Jurado, dos Jueces de esta Corte de Distrito del Distrito Judicial de San Juan, P. R., actuarán al mismo tiempo en dos salas distintas en la vista de dichos casos, ante el Jurado hasta tanto se termine la aglomeración de casos en el Calendario Criminal. Esta regla especial estará en vigor hasta que termine el presente calendario criminal y cese la emergencia que la motiva."

A nuestro juicio la regla no es contraria al artículo 199 del Código de Enjuiciamiento Criminal que prescribe:

"Siempre que los asuntos criminales del tribunal de distrito requieran la presencia del jurado para juzgarlos y no se halle presente ninguno, el tribunal puede dictar providencia disponiendo

que se designe por sorteo un jurado para conocer de la causa y que se le cite a comparecer ante dicho tribunal. Dicha providencia debe expresar el número de jurados que han de sacarse a la suerte, no debiendo este número exceder de veinte y cuatro, y el día y hora en que su presencia se requiera; y el tribunal puede disponer que los juicios criminales en que pueda necesitarse un jurado, se prorroguen hasta hallarse constituido dicho jurado.''

La propia Legislatura que ordenó la formación de las listas de jurados, reorganizó la Corte del Distrito Judicial de San Juan con mayor número de jueces que las de los otros distritos de la Isla, sin alterar los preceptos relativos a la selección de los jueces de hecho.

Las causas criminales y los casos civiles habían aumentado considerablemente en el distrito. A los jueces de derecho se les nombró para hacer frente a ese trabajo y para que cumplieran su cometido de modo eficaz se acordó que dos de ellos a la vez se dedicaran al despacho de asuntos criminales y dos paneles de veinte y cuatro jurados cada uno se extrajeron de la misma urna. No podía hacerse otra cosa y no creemos que se violara ningún derecho fundamental del acusado. La medida en nada obstaculizó el ejercicio de sus recusaciones y ninguna objeción pudo levantarse en cuanto a la imparcialidad de los doce jurados que finalmente intervinieron en su causa. Suponiendo que el panel extraído para actuar con el juez que dirigió el juicio del acusado lo hubiera sido después de haberse extraído el otro, quedaban aún en la urna 276 nombres. La realidad es que por razón de muertes, enfermedades y ocupaciones generalmente un número mayor de veinte y cuatro está siempre de hecho eliminado. ¿Y qué mejor causa de *eliminación* que la de estar prestando un servicio público en la propia corte, cooperando así a que sea una verdad la garantía constitucional del juicio rápido para todos los acusados del distrito?

■■ Los errores quinto y sexto no tienen importancia. Era propio que el testigo R. I. Dunten, *manager* de la compañía perjudicada, declarara sobre los deberes del acusado como

vendedor, a fin de establecer la relación fiduciaria del acusado para con la perjudicada, y en cuanto a que se le permitiera decir "que había oído decir," como no se exprasa qué fué lo que oyó decir no estamos en condiciones de resolver si hubo o no error en la actitud de la corte. Quizá, como insinúa el fiscal en su alegato, pudo el testigo haber oído decir algo que beneficiara al acusado.

■ Por el error séptimo se sostiene que la corte ño debió permitir que se probara la existenia de la Ice Service Co. por prueba oral y por el octavo que la corte erró al permitir luego de ello que se presentara el certificado de incorporación de dicha compañía.

La primera prueba era suficiente.

"La propiedad de los bienes," dice Underhill en su tratado sobre "Criminal Evidence," párrafo 208, "debe probarse que existía en otra persona que no es el acusado. Cuando se alega que pertenece a una corporación, prueba para demostrar una corporación *de facto* es suficiente. Las cláusulas de incorporación o certificado de incorporación no son necesarios."

Por si pudiera existir alguna duda parece que el Pueblo presentó después el certificado de incorporación y no creemos que de ello pueda quejarse el acusado.

■ El error noveno se refiere a que se permitió declarar a la testigo Carmen Prado—empleada de la perjudicada que era la que entregaba los cupones al acusado, recibía de él el importe de la venta de los mismos y llevaba nota de todo —sobre confesiones y admisiones del acusado.

No existe el error. Parece que el apelante cree que debe aplicarse en esta clase de prueba la misma regla que la que se aplica a las confesiones. No es así. Toda admisión voluntaria del acusado sobre algún hecho material y pertinente a la causa que se investiga, es admisible como prueba. Esas admisiones ocurren generalmente en el curso de una conversación o en la realización de algún acto. Si fuera necesario advertir al acusado que podrían ser usadas en

contra suya y cumplir con todos los requisitos previos a la toma de una confesión, para admitirlas, quizá jamás podrían aportarse como prueba, pues cuando ocurren lo corriente es que no se piense en proceso criminal alguno.

Recientemente en el caso de *El Pueblo* v. *Domínguez,* 39 D.P.R. 664, esta corte dijo:

"No existe el tercero de los errores señalados. Era legal permitir al testigo Juan E. Miranda que se refiriera a cierta conversación que tuvo con el acusado en la que éste admitió ciertos hechos que le perjudicaban indudablemente pero que no constituyen una verdadera confesión. En tal virtud no era aplicable la regla que rige con respecto a la admisión de confesiones."

La jurisprudencia sobre admisiones tanto en lo civil como en lo criminal es abundantísima. Una parte de la que se refiere a las del acusado en causas criminales, se resume en *Corpus Juris,* así:

"Las manifestaciones y declaraciones hechas por el acusado antes o después de la comisión del delito, que aunque no equivalgan a una confesión, sin embargo pueda derivarse de ellas, en unión a otras circunstancias, una inferencia de culpabilidad, son admisibles contra él como tales admisiones. Esas manifestaciones y declaraciones constituyen evidencia original y pueden introducirse sin sentar las bases necesarias para contradecir la veracidad de un testigo. Las admisiones pueden ser escritas u orales; y no se limitan a las manifestaciones hechas bien antes o después de la fecha del delito imputado siempre que no sean demasiado remotas en lo que a tiempo se refiere. El Estado no sólo puede probar tales admisiones, si que también puede demostrar cuándo y dónde fueron hechas. En torno a esas manifestaciones y declaraciones puede declarar un testigo que no recuerde las palabras exactas o que no viera al acusado mientras las hacía, ni reconoció su voz, siempre que las circunstancias sean tales que la voz que oyó no hubiera podido ser otra que la del acusado; pero la confesión, ya sea oral o escrita debe ser identificada como hecha por el acusado. Cuando las manifestaciones o admisiones del acusado tienden a relacionarlo con el delito que se le imputa, no llegan a ser inadmisibles por el hecho de que también tienden a inculpar a otra persona a quien no se le esté celebrando juicio. En verdad, la manifestación del acusado de

que podría complicar a otra persona en la comisión del delito, es una admisión que le perjudica y puede ser presentada como prueba. Una declaración hecha por el acusado no es inadmisible a favor del Pueblo por el hecho de que sea vaga, ambigua y contradictoria, o de que no fuera hecha en presencia de la persona lesionada o muerta al perpetrarse el delito. La evidencia sobre declaraciones voluntarias del acusado que demuestren cómo se perpetró el delito alegado, es admisible en contra suya, sin tener en cuenta de si lo perjudicaban o no al tiempo de proferirlas; y en todo caso en que, al celebrarse el juicio, esas manifestaciones sean inconsistentes con la contención del acusado, pueden ser introducidas por el fiscal; pero cuando favorecen al acusado no son admisibles por ser declaraciones en beneficio propio (self-serving declarations.)'' 4 C. J. pág. 626.

Tampoco cometió la corte el décimo error señalado al negarse a eliminar cierta llamada opinión de la testigo Carmen Prado.

No se trataba de una opinión de la testigo. Si la Srta. Prado manifestó que ella decía a Pérez "para mañana me trae el dinero, pero el Sr. Pérez le traía el dinero de otro libro,'' basaba su conclusión en la propia conducta del acusado que describe.

██ Por los señalamientos undécimo y duodécimo se imputa error a la corte por haber admitido como prueba las páginas 4 y 190 de la libreta en la que la Srta. Prado anotaba las entregas de libros de cupones al acusado que iba luego tachando cuando el acusado a su vez le entregaba el valor de los mismos, porque tal libreta no tiene sello ni nada que la identifique como perteneciente a la corporación perjudicada y en ella sólo aparecen cruces.

Las hojas de la libreta se presentaron en relación con la declaración de la testigo. Las anotaciones se hacían en el acto mismo de la transacción y formaban por tanto parte de la *res gestae* y eran en tal virtud admisibles. No hubo error.

Por el décimo tercer error se vuelve a suscitar la misma cuestión que por el noveno. Se sostiene que la corte no debió permitir declarar a los testigos Carmelo Rodríguez, Alberto Núñez, José López Cepero y O. B. Frazer sobre

admisiones del acusado. Hemos examinado dichas declaraciones y todas se refieren a diferentes admisiones voluntarias del acusado directamente relacionadas con el cargo que se le imputa.

El señalamiento décimocuarto se refiere al error que el apelante alega que la corte cometió al no permitir que declarara como perito el testigo Francisco Carrera.

El testigo declaró ampliamente sobre el sistema de venta de hielo por medio de libros de cupones y ya bien avanzada su declaración de modo insistente manifestó que no había venido a la corte a informar como perito, que no tenía esa pretensión y entonces el juez resolvió que no admitía la declaración del testigo como perito tanto por las propias manifestaciones del testigo cuanto porque su declaración se refería a la compañía de hielo de Bayamón cuyos libros de cupones eran distintos de los de la Ice Service Co.

No vemos que se cometiera error alguno.

Tampoco se cometieron los errores décimoquinto y décimosexto. La jurisdicción de la Corte de Distrito de San Juan aparece expresamente alegada en la acusación y la prueba es más que suficiente. La circunstancia de que se tratase de un hombre bien querido en la comunidad y de buena reputación en ella, cede a la prueba concreta del hecho delictivo por él realizado.

*Debe confirmarse la sentencia apelada.*